**FLEISCHER, FLEISCHER & SUGLIA**
**BRIAN M. FLEISCHER, ESQUIRE**
**I.D. No. 55894**
**NICOLA G. SUGLIA, ESQUIRE**
**I.D. No. 88998**
**JACLYN S. DOPKE, ESQUIRE**
**I.D. No. 92557**
**Plaza 1000 at Main Street, Suite 208**
**Voorhees, NJ 08043**
**(856) 489-8977**

**Attorneys for the Ervin Parties**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Keith Ervin, et al. : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. 05-CV-184-LS |
| First American Marketing Corporation d/b/a : | |
| Kaehall Estate Planning Coordinators, et al., : | |
| : | |
| Defendants, : | |
| : | |
| First American Marketing Corporation : | |
| d/b/a Kaehall Estate Planning Coordinators, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 05-CV-468-LS |
| : | |
| Keith Ervin, et al., : | |
| : | |
| Defendants. : | |

## THE ERVIN PARTIES' PROPOSED JURY INSTRUCTIONS

1

Keith Ervin, Kimberly Ervin, Ronald Bresel, James Garcia, Pauline Serfass and United Integrity Group (hereinafter collectively referred to as the "Ervin Parties") by and through their attorneys, Fleischer, Fleischer & Suglia, respectfully move this Honorable Court to charge the jury completely and accurately in accordance with applicable law, and, in particular, move the Court to instruct the jury as to the following substantive principles of law submitted herewith.

The Ervin Parties reserve the right to submit supplemental jury instructions that may become appropriate during the course of trial.

FLEISCHER, FLEISCHER & SUGLIA


By:   /s/ Nicola G. Suglia, Esquire___
      Nicola G. Suglia, Esquire
      I.D. No. 88998
      Validation of Signature Code: NGS4920

Dated: March 1, 2007

_____

**SHAREHOLDER OPPRESSION 1 - Definition**

"Oppressive conduct in the context of a close corporation 'often takes the form of freezing-out a minority shareholder by removing him from his various offices or by substantially diminishing his power or compensation'." <u>Adler v. Tauberg</u>, 2005 PA Super 258 (2005), citing Pa.C.S. § 1767.

**SHAREHOLDER OPPRESSION 2 - Reasonable Expectations**

Pennsylvania has adopted the 'reasonable expectations' test to define oppression which ties oppression to frustration of the reasonable expectations of the shareholders.  Adler v. Tauberg, 2005 PA Super 258 (2005), citing Del Borrello v. Del Borrello, 62 Pa.D & C 4th 417 (2001).  "Oppression is defined as 'unjust or cruel exercise of authority or power'."  Id. citing Leech v. Leech, 762 A.2d 718 (Pa. Super. 2000).

**SHAREHOLDERS OPPRESSION 3 - Oppressive Actions**

"Oppressive actions refer to conduct that substantially defeats the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." <u>Gee v. Blue Stone Heights</u>, 145 Pa. Cmwlth. 658 (1992); <u>see</u> <u>also</u>, <u>Ford v. Ford</u>, 2005 Pa. Super. 237 (2005).

**SHAREHOLDERS OPPRESSION 4 - Fiduciary Duty**

"Stockholders in a close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another." Orchard v. Covelli, 590 F. Supp. 1548 (1984).

"It is axiomatic that majority shareholders have a duty not to use their power in such a way to exclude minority shareholders from their proper share of benefits accruing from the enterprise.  The aforementioned principle does not mean that majority shareholders may never act in their own interest, but when they do act in their own interest, it must be done in the best interest of all shareholders and the corporation.  See Viener v. Jacobs, 834A.2d 546,556 (Pa. Super 2003).

**SHAREHOLDERS OPPRESSION 5 - Maryland Law**

Even under Maryland law "A majority stockholder in a close corporation owes a fiduciary obligation not to exercise that control to the disadvantage of minority stockholders".  <u>Lerner v. Lerner Corporation</u>, 132 Md. App 32750 (2000).

**SHAREHOLDERS OPPRESSION 6 - Damages**

Maryland has joined other courts in allowing alternative remedies for shareholder oppression beyond those which are governed by statute.  One such remedy is to require a corporation or a majority of its shareholders to purchase the stock of the minority shareholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price.  See Edenbaum v. Schwarz-Osztreicherne, 165 Md. App. 233 (2005); see also, Orchard v. Covelli, 590 F. Supp. 1548 (1984).

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 1 - Definition**

In order for the FAMC Parties to recover damages for unlawful interference with prospective economic advantage, it must be found that the Ervin Parties interfered with a reasonable expectation of economic advantage and benefit on the part of the FAMC Parties. Thus, the FAMC Parties must prove all of the following elements:

1.     The existence of a reasonable expectation of economic advantage or benefit belonging to the FAMC Parties;

2.     The Ervin Parties had knowledge of that expectation of economic advantage;

3.     The Ervin Parties wrongfully and without justification interfered with the FAMC Parties reasonable expectation of economic advantage or benefit;

4.     In the absence of the wrongful act of the Ervin Parties, it is reasonably probably that the FAMC Parties would have realized its economic advantage or benefit;

5.     The FAMC Parties sustained damages as a result of this activity by the Ervin Parties.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.01 Interference with Prospective Advantage (2000)

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 2 - Solicitation**

In the absence of a valid contract, there would be no prohibition against the Ervin Parties getting to a third party prospect first.  See Zippertubing Co. v. Teleflex, Inc., 757 F.2d 1401, 3d. Cir. (1985).

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 3 - Raiding Key
Employees, Definition**

It is not unlawful or improper, standing alone, to hire away another's employee so long as
the person carrying away that employee wants to use the employee's services in advancing that
person's own business rather than with the intent of destroying the other employer's business.
This is true regardless of how much the loss of the employee may inconvenience the employee's
former employer.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee,

Instruction No. § 127.02 Raiding Key Employees (2000)

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 4 - Raiding Key Employees, Competition**

The mere fact that one's activity has injured another in the other's business does not mean that the latter may recover because, in a free enterprise system, a business is obliged to suffer a loss for the services of skilled employees. If the means of competition are fair, the advantage gained should remain where success has put it.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.02 Raiding Key Employees (2000)

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 5 - Raiding Key Employees, Competition**

A systematic effort to induce employees to leave their present employment and take work with another is unlawful when the purpose of such enticement is to cripple or destroy their employer rather than to obtain their skills and services to the legitimate furtherance of one's own business enterprise.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.02 Raiding Key Employees (2000)

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 6 - Intentional Interference**

In determining whether an actor's conduct is intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

1.      The nature of the actor's conduct;

2.      The actor's motive;

3.      The interests of the other with which the actor's conduct interferes;

4.      The interests sought to be advanced by the actor;

5.      The social interests in protecting the freedom of action of the actor and the contractual interests of the other;

6.      The proximity or remoteness of the actor's conduct to the interference; and

7.      The relation between the parties.

See Restatement (Second) of Torts § 767

**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE 7 - Damages**

If you find that the FAMC Parties failed to prove their claim of tortious interference as defined in these instructions, then, of course, your verdict will be for the Ervin Parties.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.03 Damages (2000)

**BUSINESS TORTS - TRADE SECRETS 1 - Essential Elements of Claim**

You are to determine whether any trade secrets have been misappropriated by the Ervin

Parties.  In order to establish a trade secret violation, the FAMC parties have the burden of

proving by a preponderance of the evidence that:

1. Trade secrets existed;

2. The Ervin Parties' acquired those secrets as a result of a confidential relationship;

3. The Ervin Parties' used the secret information without authorization of the FAMC
   Parties;

4. The FAMC parties suffered harm as a direct and proximate result of the Ervin
   Parties use or disclosure of the FAMC Parties trade secret or the Ervin Parties
   gained from such use or disclosure.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee,

Instruction No. § 127.10 (2000)

**BUSINESS TORTS - TRADE SECRETS 2 - Wrongful Use**

Only wrongful use of secret information disclosed in confidence gives rise to liability.  To find the Ervin Parties liable for misappropriation of trade secrets, you must find by the preponderance of the evidence that the FAMC Parties had specific, identifiable trade secrets that were acquired by the Ervin Parties as a result of a confidential relationship and that the Ervin Parties used these secrets in developing or making its product.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.10 (2000)

**BUSINESS TORTS - TRADE SECRETS 3 - Elements of Misappropriation**

A Plaintiff generally must establish the following elements in order to prevail on a misappropriation of trade secrets case:

1.      A trade secret existed in which the FAMC Parties had ownership rights when the Ervin Parties committed the acts complained of by the FAMC Parties.

2.      The Ervin Parties acquired the trade secret either through improper means, or through the FAMC Parties' disclosure of the trade secret to the Ervin Parties in a confidential relationship, or under other circumstances in which the Ervin Parties owed a duty not to use or disclose the trade secret.

3.      The Ervin Parties used or disclosed the trade secret without the FAMC Parties' permission.

4.      The FAMC Parties suffered harm as a direct and proximate result of the Ervin Parties' use or disclosure of the Plaintiff's trade secret, or the defendant gained from such use or disclosure.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.11 (2000); see also, ABA Model Jury Instructions: Business Torts Litigation 366 (3d ed.1996).

18

**BUSINESS TORTS - TRADE SECRETS 4 - Definition**

A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret, and must not be public knowledge in the trade or business.  Matters of general knowledge in an industry cannot be a trade secret. Trade secret protection is lost if the secret is disclosed to the public.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.11 (2000).

**BUSINESS TORTS - TRADE SECRETS 5 - Preponderance of the Evidence**

In determining whether the FAMC Parties have proven by a preponderance of the evidence that the FAMC Parties possessed specific identifiable trade secrets, you may consider the following factors:

1.  The extent to which the information was known outside of the FAMC Parties' business;

2.  The extend to which it was known by employees and others involved in the FAMC Parties' business;

3.  The extent of measures taken by the FAMC Parties to guard the secrecy of the information;

4.  The value of the information to the FAMC Parties and its competitors;

5.  The amount of effort or money expended in developing the information;

6.  The ease or difficulty with which the information could be properly acquired or duplicated by others.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.11 (2000).

**BUSINESS TORTS - TRADE SECRETS 6 - Unfair Competition**

The Restatement (Third) of Unfair Competition defines "unfair trade practice" as follows:

A trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.11 Unfair Competition (2000).

**BUSINESS TORTS - TRADE SECRETS 7 - Confidential Relationship**

1.      You must also determine whether the FAMC Parties have proved by a
preponderance of the evidence that The FAMC Parties' trade secrets were given to
the Ervin Parties as a result of a confidential relationship between the parties.  An
express or written agreement is not a prerequisite to the establishment of a
confidential relationship.

2.      You must find that an express or implied agreement existed between the parties -
that they both did or ought to have understood its terms.  You may find that such a
relationship was implied by the business relationship or by the circumstances
surrounding the dealings between the parties.

3.      A mere allegation of a confidential relationship is not enough, however.  The fact
of such a relationship must be proven by the FAMC Parties by the preponderance
of the evidence.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee,

Instruction No. § 127.12 Confidential Relationship (2000).

**BUSINESS TORTS - TRADE SECRETS 8 - Misappropriation**

If you decide that there was a confidential relationship between the FAMC Parties and the Ervin Parties and that the FAMC Parties disclosed trade secrets to these people, then you must decide whether that trade secret information was misappropriated by the Ervin Parties.

A misappropriation has occurred if the Ervin Parties used the trade secrets of the FAMC Parties to make its products.  Mere conjecture or speculation as to this use is not sufficient.  The FAMC Parties must prove by a preponderance of the evidence that the Ervin Parties used the trade secrets in making the Ervin Parties' products.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.13 Misappropriation (2000).

**BUSINESS TORTS - TRADE SECRETS 9 - General Knowledge**

Trade secret protection does not extend to the employee's general knowledge, experience, aptitude, skill, dexterity, manual and mental ability or other such subjective knowledge obtained in his employment with the plaintiff.  Van Products Co. v General Welding & Fabricating Co., 419 Pa. 248 (1965).  In Carl A. Colteryahn Dairy Inc. v. Schnieder Dairy, 415 Pa. 276, 203 A.2d 469 (1964), the court held against granting injunctive relief on the grounds that the use of the customer lists is allowed when the employees use the lists from their own memory.

The agent is entitled to use general information concerning...the names of the customers retained in his memory." Id. at 472.

**BUSINESS TORTS - TRADE SECRETS 10 - Compensatory Damages**

If you should find by the preponderance of the evidence presented that the Ervin Parties have misappropriated the FAMC Parties' trade secrets, you must then determine the amount of damages, if any, the FAMC Parties is entitled to receive. The fact that I am instructing you on the subject of damages does not mean that the FAMC Parties are or are not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you if you find from a fair preponderance of the evidence that the FAMC Parties are entitled to recover damages.

The FAMC Parties have the burden of establishing the amount of actual damages, if any, that were suffered. Damages must be determined with reasonable certainty from the evidence presented. Mathematical precision need not be shown, but you are not to guess or speculate as to damages.

You may only aware an amount that would fairly compensate the FAMC Parties for damages proximately caused by the Ervin Parties' use of trade secrets. You may consider, in awarding such actual damages, the cost the Ervin Parties would have incurred in acquiring the same information or trade secrets through its own experimentation or through other lawful means, or you may consider the actual view of what has been appropriated or the reasonable royalty as of the time of the misappropriation.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 127.14 Compensatory Damages (2000).

**BUSINESS TORTS - TRADE SECRETS 11 - Customer Lists**

Customer lists are generally not the type secrets which require equitable preservation. Denawetz v. Milch, 407 Pa. 115 (1962).   Equity will not protect mere names and addresses easily ascertainable by observation or reference to directories.  Id.

Whether customer lists are trade secrets entitled to protection depends on whether they are the particular secrets of the complaining employer, not general secrets of the trade in which he is engaged and whether they were communicated to the employee in the court of confidential employment.  Navarro v. Diecidue, 34 Pa. D.&C. 4th 391 (Pa. 1996).

**BUSINESS TORTS - TRADE SECRETS 12 - Pursuit of Livelihood**

"The right of a business person to be protected against unfair competition stemming from the usurpation of his or her trade secrets must be balanced against the right of an individual to the unhampered pursuit of the occupations and livelihoods for which he or she is best suited".

Fidelity Fund, Inc. v. DiSanto, 347 Pa. Super. 112 (1985).

**BUSINESS TORTS - TRADE SECRETS 13 - Personal Contacts**

Where the former employee has dealt with customers on a personal basis, it is inevitable that some customers will want to continue to deal with the former employee in his new association.  <u>Heritage Copy Products, Inc. v. Fredericks</u>, 37 Pa. D.&C. 3d 392 (1984).

Trade secrets did not exist when customers with whom the defendant had contact prior to his employment with plaintiff or when the customers were developed by his individual effort while employed by the plaintiff.  <u>Fidelity Fund, Inc. v. Joseph Di Santo and Schiff Terhune Inc.</u>, 347 Pa.Super. 112 (1985)

**BUSINESS TORTS - TRADE SECRETS 14 - Harm to Customer**

The greatest harm would be to the customers because they would be prevented from

doing business with someone with whom they have developed a trust for over a period of time.

In <u>Renee Beauty Salon, Inc. v. Blose Venable</u>, 652 A.2d 1345 (1995), the court stated, in dicta,

that "customers naturally follow the employee".

**BREACH OF CONTRACT 1 - Elements of Contract Formation**

A contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty.  To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract.  This is referred to as the "meeting of the minds."  There must be a meeting of the minds; there can be no contract if only one party intends to be bound.

Because intent, including intent to be bound, is seldom susceptible to direct proof because it relates to a person's state of mind, the law presumes that a person intends the natural and probable consequences of that person's acts.  The meeting of the minds or the mutual manifestation of intent may be made wholly or partly by written or spoken words or by other acts or conduct, and an internal or unexpressed intention not to be bound is ineffective.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 126.01 Elements of Contract Formation (2000).

**BREACH OF CONTRACT 2 - Undue Influence**

The contract is invalid if you find that the Ervin Parties were under the domination of the FAMC Parties, and that the contract was unfair, unreasonable, the result of overreaching, coercion or inequitable conduct, and was not freely and voluntarily entered into and with full understanding of its terms and consequences.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 126.11 Undue Influence (2000).

31

**BREACH OF CONTRACT 3 - Determining the Contract**

With regard to this case, where an employer establishes policies and practices that it makes known to its employees and that are intended to govern the employment relationship and where the employee has a legitimate expectation these policies and practices will be followed, the policies and practices in question become an obligation of the employer that the employer is obligated to follow.  In other words the policies and practices in question become part of the contract of employment.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee, Instruction No. § 126.62 (2000).

**BREACH OF CONTRACT 4 - Employer Breach**

If the employer fails to follow the policies and practices, then the employer has breached

its contract of employment with the employee and the employer is liable to the employee for the

damages suffered by the employee because of the breach.

See Federal Jury Practice and Instructions (Civil Cases), 5th Ed., O'Malley, Grenig and Lee,

Instruction No. § 126.62 (2000).

An employer is not bound by an employee's private or personal or subjective expectation

not communicated by the employer's own words.

**RESTRICTIVE COVENANTS 1 - Disfavored**

Restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.  Jacobson & Co. v. Int'l Env't Corp., 427 Pa. 439 (Pa. 1967).

**RESTRICTIVE COVENANTS 2 -Restrain Competition**

Where the sole object of the contract is merely to restrain competition, and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopolize, and therefore, would be void.  There is in such contract no main lawful purpose.  Jacobson & Co. v. Int'l Env't Corp., 427 Pa. 439 (Pa. 1967).

**RESTRICTIVE COVENANTS 3 - When Enforceable**

In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of geographic extent.  Sidco Paper Co. v. Aaron, 465 Pa. 586 (Pa. 1976).

A restrictive covenant may be enforceable if it satisfies the following three requirements: 1) the covenant must relate to the sale of goodwill or property or to a contract for employment; 2) it must be supported by adequate consideration; and 3) enforcement of the covenant must be reasonably limited in both time and geographic scope.  See Quaker City Engine Rebuilders, Inc. v. Toscano, 369 Pa. Super. 573, 579 (Pa. Super. 1987) citing Maintenance Specialities v. Guttus, 455 Pa. 327 (1974) (emphasis added).

**RESTRICTIVE COVENANTS 4 - Confidential Information**

If the information the employer seeks to keep confidential could be obtained by legitimate means by its competitors, enforcement of the covenant on that basis is not appropriate.  Carl A. Coteryahn Dairy v. Schneider Dairy, 415 Pa. 276 (Pa. 1964).

**DUTY OF LOYALTY 1 - Proper Competition**

After the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed.

Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein.  Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete.  He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

<u>See</u> Restatement 2nd (Agency) § 393.

**DUTY OF LOYALTY 2 - Proper Competition**

It is normally permissible for employees of a firm, or for some of its partners, to agree among themselves, while still employed, that they will engage in competition with the firm at the end of the period specified in their employment contracts.

<u>See</u> Restatement 2nd (Agency) § 393.

**FRAUD 1 - Elements of Fraud under Maryland Law**

The elements for fraud in Maryland are: (i) false representation; (ii) knowledge that the representation was false, or reckless indifference for the truth; (iii) purpose of defrauding the person claiming to be injured; (iv) justifiable reliance on the representation by the injured person; and (v) actual damages. Froelich v. Erickson, 196 F. Supp. 2d 507 (Md. 2000); see also, Miller v. Fairchild Industries, Inc., 97 Md. App. 324 (Md. Spec. App. 1993).

**FRAUD 2 - Intent (Maryland Law)**

Maryland courts have emphasized that fraud exists only when the speaker had (i) intent to defraud, and (ii) knowledge that his statement was false at the time it was made. See Id. at 343-44.

**FRAUD 3 - Self-Dealing (Maryland Law)**

A fiduciary must act in the best interest of the beneficiary without engaging in self-dealing transactions. American Metal Forming Corp. v. Pittman, 135 B.R. 782 (Md. 1992); see also, Crawford v. Mindel, 157 Md. App. 111 (1984).

**FRAUD 4 - Self-Dealing Example (Maryland Law)**

"[W]hen presented with a business opportunity to fulfill a corporate purpose, [the fiduciary] . . . should take advantage of it, not for himself, but for the corporation." <u>American Metal Forming Corp. v. Pittman</u>, 135 B.R. 782 (Md. 1992); <u>see also</u>, <u>Dixon v. Trinity Joint Venture</u>, 49 Md. App. 379, 383, 431 A.2d 1364, 1366 (1981).

**FRAUD 5 - Punitive Damages (Maryland Law)**

  Punitive damages are recoverable against directors for fraud and self-dealing.  <u>Federal Savings & Loan Ins. Corp. v. Williams</u>, 599 F. Supp. 1184 (Md. 1984).

**FRAUD 1 – Definition under Pennsylvania Law**

Fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture.  It is any artifice by which a person is deceived to his disadvantage.  In re Reicherts Estate, 51 A.2d 615, 617 (Pa.. 1947); In re McClellan's Estate, 75 A.2d 595, 598 (Pa. 1950); Integrated Behavioral Health Systems v. Department of Public Welfare, 871 A.29 296, 300 (Pa. Cmwlth 2005)

**FRAUD 2 – Elements of Fraud (Pennsylvania Law)**

To establish a claim of fraud, the Plaintiff is required to prove by clear and convincing evidence: (1) a false representation of an existing fact or a non-privileged failure to disclose; (2) materiality, unless the misrepresentation is intentional or involves a non-privileged failure to disclose; (3) actual knowledge or reckless indifference to the truth; (4) justifiable reliance on the misrepresentation, so that the exercise of common prudence or diligence could not have ascertained the truth; and (5) damage to him as a proximate result. <u>Shane v. Hofmann</u>, 227 Pa.Super. 176, 324 A2d 532, 536 (1974); <u>Scaife co. v. Rockwell-Standard Corp</u>., 446 Pa. 280, 285 A2d 451, 454 (1971), cert. denied, 407 U.S. 920, 92S.Ct. 2459, 32 L.Ed.2d806 (1972); <u>Tunis Bros. Co. V. Ford Motor Co.</u>, 952 F.2d 715, 731 (3d Cir. 1991); <u>Berda v. CBS, Inc.</u>, 881 F.2d 20, 27 (3d Cir.1989), cert. denied, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); <u>Beardshall v. Minuteman Press Int'l, Inc.</u>, 664 F.2d 23, 26 (3d Cir.1981).

**FRAUD 3 - Misrepresentation (Pennsylvania Law)**

A misrepresentation is any assertion, by words or conduct, that is not in accordance with the facts.  Pa. Suggested Standard Civil Jury Instructions, #13.14 (Civ), ¶2, first sentence.

**FRAUD 4 - Failure to Disclose (Pennsylvania Law)**

A misrepresentation may be made by failing to disclose information if a party has a duty

to disclose that information.  Shane v. Hofmann, 227 Pa.Super. 176, 324 A2d 532, 536 (1974);

Scaife co. v. Rockwell-Standard Corp., 446 Pa. 280, 285 A2d 451, 454 (1971), cert. denied, 407

U.S. 920, 92S.Ct. 2459, 32 L.Ed.2d806 (1972); Tunis Bros. Co. V. Ford Motor Co., 952 F.2d

715, 731 (3d Cir. 1991); Berda v. CBS, Inc., 881 F.2d 20, 27 (3d Cir.1989), cert. denied, 493

U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990); Beardshall v. Minuteman Press Int'l, Inc.,

664 F.2d 23, 26 (3d Cir.1981).

**FRAUD 5 - Indirect**

To find that the FAMC Parties made a false representation, you may find that a misrepresentation was made indirectly, that is, that the FAMC Parties made a misrepresentation that caused harm to the Ervin Parties even though the Ervin Parties did not receive the misrepresentation directly from the FAMC Parties who made the misrepresentation.  Hoffman v. Stamper, 843 A.2d 153, 190, 155 Md. App. 247 (2004).

**FRAUD 6 - Damages**

The Ervin Parties are entitled to be fairly and adequately compensated for the actual monetary loss they have suffered.

See Pa. Suggested Standard Civil Jury Instructions, #13.17 (Civ) (with adjustments indicated by the instruction itself).

**ULTRA VIRES 1 - Definition**

A general presumption of right-acting attends corporations, the effect of which is to place the burden of proving that a contract made or an act done by a corporation was *ultra vires* upon him who alleges that fact as the foundation of his action or defense.  <u>R & F Products Corp. v. Rosenthal,</u> 153 Md. 501 (1927).

**ULTRA VIRES 2 - Violation of Corporate Charter**

An act of a corporation is considered ultra vires when the act is done in violation of the corporate charter, by laws, and/or requirements for a meeting.  R & F Products Corp. v. Rosenthal, 153 Md. 501 (1927).

A corporation possesses no power except such as are conferred upon it by its charter either by express grant or necessary implication.  Id.

**BEST INTEREST OF CORPORATION 1 - Business Judgment Rule**

The business judgment rule is both an acknowledgment of the managerial prerogatives of directors and a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.  Werbowky v. Collomb, 362 Md. 581 (2001).

**BEST INTEREST OF CORPORATION 2 - Protections under Business Judgment Rule**

Its protection, however, can be claimed only by disinterested directors whose conduct otherwise meets the tests of business judgment.  From the standpoint of interest, this means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.  Accordingly, if that kind of director interest is present and the transaction is not approved by a majority consisting of disinterested directors, the business judgment rule has no application.  <u>Werbowky v. Collomb</u>, 362 Md. 581 (2001).

To avail themselves of the business judgment rule, directors have a duty to inform themselves of all material information reasonably available to them and to act with requisite care in the discharge of their duties. <u>Id</u>.

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 1**

     A worker who is required to comply with other persons' instructions about when, where and how he or she is to work is ordinarily an employee, not an independent contractor (see Rev. Rul. 68-598, 1968-2 C.B. 464 and Rev. Rul. 66-381. 1966-2 C.B. 449).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 2**

When training is provided to a worker, or when the worker is required to attend meetings, he or she is ordinarily an employee and not an independent contractor (see Rev. Rul. 70-630, 1970-2 C.B. 229).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 3**

If services must be rendered personally, that worker is ordinarily an employee (see Rev. Rul. 70-630, 1970-2 C.B. 229).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 4**

A continuing relationship between the worker and the person for whom the services are being performed indicates an employee-employer relationship (see <u>United States v. Silk</u>, 331 U.S. 704 (1947)).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 5**

If a worker cannot work for more than one company than he is ordinarily an employee

(see Rev. Rul. 56-964, 1956-2 C.B. 694).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 6**

An independent contractor cannot be terminated so long as he or she produces a result that meets the contract specifications (see Rev. Rul. 75-41, 1975-1 C.B. 323).

**INDEPENDENT CONTRACTOR VS. EMPLOYEE RELATIONSHIP 7**

If a worker does not pay for his office or office supplies he is ordinarily an employee, not an independent contractor (see Rev. Rul. 71-524, 1971-2 C.B. 346);  Special scrutiny is required to arrangements involving home offices and similar arrangements.  Id.